## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:17CR-00012-JHM**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**

**RICHARD MAIKE, et al.**                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions in limine by Defendants, Doyce Barnes, Richard Maike, Faraday Hosseinipour, and Jason Syn, to exclude certain evidence. [DN 306, DN 308, DN 309, DN 313]. The United States responded. [DN 339]. Defendants, Jason Syn, Richard Anzalone, Faraday Hosseinipour, and Dennis Dvorin, also moved to adopt these motions in limine. [DN 307, DN 310, DN 311, DN 312, DN 314, DN 315, DN 316, DN 319, DN 320, DN 321]. The Court previously granted those motions to adopt. [DN 341]. Fully briefed, these matters are ripe for decision.

### 1. Involvement of State Attorney Generals [DN 306, DN 313]

Defendants move to exclude evidence that any state attorney general's office investigated and/or responded to any complaint pertaining to I2G or G1E. [DN 306 at 1–2; DN 313 at 2]. Defendant Syn references Exhibit 26 and 27.[1] Defendant Barnes included as an example Exhibit 27 of the United States' Exhibit List. Exhibit 27 is a letter from Thomas Olsen, Citizen Assistance Analyst with the Minnesota Attorney General's Office, to an I2G IBO/investor named Shawn Vougeot forwarding a copy of a response prepared by Finance Venture Attorney David Koemer regarding the complaint made by Vougeot, a purchaser of an Emperor position. In the attached

---

[1] An objection to an exhibit should be accompanied by the actual exhibit. The Court does not have a copy of many of the exhibits referenced by Defendant Syn.

letter, Koemer described two sales that took place to Vougeot.  Koemer indicated that Vougeot never requested a refund from Finance Ventures.  Defendants argue that the Minnesota Attorney General served merely as a conduit for both the complaint and the response by Koemer. Defendants maintain that in the event the content of the letter of counsel for Finance Ventures is deemed admissible, the involvement of the Minnesota Attorney General is irrelevant and would unduly prejudice the Defendants and create unnecessary confusion.  Defendant Barnes moves to redact the portions of documents reflecting the involvement of any state Attorney General.  [DN 306 at 1–2; DN 306-1].

In response, the United States argues that Defendants do not want the jury to see that some of the individuals who invested in Emperor positions complained to their state Attorney General about I2G.  According to the United States, the evidence is probative of the fraudulent nature of I2G's business because some of the witnesses for the United States are expected to testify that their repeated efforts to contact anyone at I2G to request a refund were largely ignored *until* they submitted a written complaint to their state Attorney General.  The United States represents that only then did they receive a response from an attorney for the company.  [DN 339 at 4].

Relevant evidence is defined in Federal Rule of Evidence 401 as evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." "Relevancy is an extremely broad concept.  Both the Supreme Court and the Sixth Circuit have noted that the standard set forth in Rule 401 is a liberal one."  *Hinkle v. Ford Motor Co.*, 2012 WL 4049477, *1–2 (E.D. Ky. Sept. 13, 2012) (citing *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006)).

However, Federal Rule of Evidence 403 provides that relevant evidence may be excluded

"if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "Evidence is not excluded merely because it is damaging or prejudicial to a defendant's case; rather, it must be *unfairly* prejudicial." *Hinkle*, 2012 WL 4049477, *1 (citing *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403." *Hinkle*, 2012 WL 4049477, *1 (citing *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006)).  "[T]o warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially outweigh* its probative value." *Id*. (citing Fed. R. Evid. 403).  "Rule 403 is not concerned with 'the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'" *Hinkle*, 2012 WL 4049477, *1 (quoting *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986)).

The Court finds that evidence of a testifying witness's contact with a state attorney general's office is relevant to explain the victim's story, including the actions the victim took in addressing any alleged problems he or she encountered with the company.  For example, assuming Shawn Vougeot testifies at trial, he may testify regarding his contact with I2G, his subsequent contact with the Minnesota Attorney General's Office, and the response he received from the Minnesota Attorney General's Office and I2G.  Such evidence is similar to "res gestae" evidence as it "forms an integral part of a witness's testimony," completes the victim's story, and, thus, is relevant and probative. *See*, *e.g.*, *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

In light of its response, the Court assumes that the United States does not intend to introduce any evidence or testimony regarding the results of any investigation by the Minnesota

3

Attorney General or by other Attorney General's offices.  Absent that, the Court finds that evidence regarding a witness's contact and resulting response from a state attorney general's office is not unduly prejudicial, does not create unnecessary confusion, and does not require exclusion under Rule 403.

For these reasons, the motion in limine to exclude and/or redact is denied.

## 2. Emails Regarding Problems with the I2G Touch [DN 306; DN 313]

Defendants object to the introduction of emails directed to various co-conspirators that contain complaints about problems with certain I2G products.  [DN 306 at 2; DN 313 at 2]. Defendant Syn references numerous exhibits but did not attach those emails. Defendant Barnes includes as examples Exhibits 124[2] and 134 of the United States' Exhibit List and specifically discussed Exhibit 134. [DN 306-2, DN 306-3].  Exhibit 134 is an email from Raymond Ho, Hawaii I2G Leader, that was forwarded by Jason Syn to Richard Maike and his wife.  Defendants argue that the assertions contained in the emails are hearsay.  To the extent the statements are admitted for some non-hearsay purpose regarding the individual who received the email, Defendants request a limiting instruction that the emails cannot be considered for any purpose against those Defendants who did not receive the email.  [DN 306 at 2].

In response, the United States argues that it intends to introduce Exhibit 134 not for the truth of the matters asserted therein, that there were issues with the I2G Touch and Songstagram, but to show (1) that Maike and Syn were on notice that I2G promoters were raising questions about the products well into the time frame of the conspiracy, and (2) what Maike and Syn were doing or not doing with this information.  [DN 339 at 5].  The United States argues that these kinds of email messages are offered for a non-hearsay purpose—to show the effect the email messages had

---

[2] Exhibit 124 is an email from Angela Leonard to Rocky White, creator of I2G Touch, identifying issues occurring with the I2G Touch. [DN 306-3].

4

upon the reader.  Further, the United States asserts that the potential for unfair prejudice is minimal in that the inventor of the I2G Touch and Songstagram will testify to his first-hand knowledge and awareness of the problems with the products.  [*Id.*].

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1),(2).  Under the Federal Rules of Evidence, hearsay is not admissible, Fed. R. Evid. 802, unless it fits into one of several exceptions, *see* Fed. R. Evid. 803.  Significantly, statements that arguably constitute hearsay may still be offered when offered "not for the truth of the matter asserted, . . . but to show notice."  *Flint ex. rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 345 n. 6 (6th Cir. 2001).  Additionally, "[t]he rule does not apply to statements offered merely to show that they were made or had some effect on the hearer."  *Wright v. Beard*, No. 1:14CV-00090-GNS-HBB, 2016 WL 7173787, at *2 (W.D. Ky. Dec. 8, 2016) (citing *United States v. Miriani*, 422 F.2d 150, 153 (6th Cir. 1970); *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007)).

After a review of the case law and representations of the United States, the Court finds that Exhibit 134 is admissible to prove Maike's and Syn's notice and knowledge of continued problems with and complaints about the "products" offered by I2G and their response to the information. Under such circumstances, the emails are not being offered to prove the truth of the matter asserted and are not subject to the hearsay exclusion.  *See Galloway v. Big G. Express, Inc.*, No. 3:05-CV-545, 2008 WL 2704443, at *3–4 (E.D. Tenn. July 3, 2008) ("[H]earsay concerns do not serve as a basis of precluding the [emails] to the extent such evidence is offered to establish notice or Defendant's knowledge."); *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."); *United States v. Smith*, No. 3:14CR-

99-JHM, 2016 WL 589890, at *11 (W.D. Ky. Feb. 11, 2016).

Accordingly, the motion in limine to exclude Exhibit 134 is denied.  The United States did not address the admissibility of Exhibit 124 and will be given the opportunity to do so at the pretrial conference.  Likewise, the United States did not address the appropriateness of a limiting instruction with respect to Exhibit 134.  The United States should be prepared to address this at the pretrial conference as well.

**3. Exclude Reference or Proof that Emperor Position is a Pyramid Scheme [DN 306, DN 313]**

Defendants move to exclude the United States from referring to or otherwise attempting to prove that the Emperor Level is an illegal pyramid scheme.  Defendants argue that the allegations contained in the Second Superseding Indictment regarding pyramid schemes all relate to participants who had an opportunity to share in the profits of the online casino—i.e., those in the Emperor position.  In support of this motion, Defendant Barnes cites *United States v. Gold Unlimited, Inc.*, 177 F.3d 472 (6th Cir. 1999), in which the Sixth Circuit recognized that the presence of an anti-saturation program is an affirmative defense to a claim that a multi-level marketing program is an illegal pyramid scheme.  *Id.* at 481–82.  Defendants maintain that since the Emperor position was limited to 5,000 participants, it cannot constitute an illegal pyramid scheme as a matter of law, and the United States should be precluded from arguing or attempting to prove that it is an illegal pyramid scheme at trial.  [DN 306 at 3].  Additionally, Defendant Syn moves to exclude *any* reference or testimony that I2G or G1E is actually a pyramid scheme because the phrase is highly prejudicial and misleading and because that topic is a factual issue for the jury to decide.  [DN 313 at 2].

In response, the United States objects noting that the Defendants' assertion that a multi-level marketing ("MLM") company with anti-saturation policies is, as a matter of law, not a

pyramid scheme is incorrect.  The United States maintains that under the case law, the Defendants have the burden of proving that any anti-saturation programs they had in place were more than cosmetic and would have the actual effect of preventing the company from collapsing on the later investors.  [DN 339 at 6].  The Court agrees.

In *Gold Unlimited*, the defendant objected that the district court's instruction on pyramid schemes failed to inform the jury that a corporation can enact safeguards to ensure that it operates a legitimate MLM.  *Gold Unlimited*, 177 F.3d at 481.  In analyzing this argument, the Sixth Circuit concluded that the defendant has the burden of establishing anti-saturation and must produce sufficient evidence to warrant a jury instruction on the defense.  *Id*.  Further, the Sixth Circuit noted that the government's proof at trial established that defendant ran an illegal pyramid scheme masked with "cosmetic anti-saturation policies" and concluded that the government's evidence focused "on the actual effect of the plan" which deserved far more weight that defendant's presentation which "relied on the existence of alleged anti-saturation policies."  *Id*. at 481–82.  Finally, finding that defendant failed to request an instruction on the affirmative defense and finding that as a matter of law failed to prove that it merited one, the Sixth Circuit concluded the following:

> We find it more appropriate, however, that a defendant carry the burden of establishing that it has effective anti-saturation programs.  Given the grave risks imposed on investors in illegal schemes, the government should have to do no more than prove that the program satisfies the definition of *Koscot*.  *See, e.g., [Matter of Amway Corp., Inc.*, No. 9023, 93 F.T.C. 618, 699 (F.T.C. May 8, 1979)] ("There is little doubt that a pyramid distribution scheme should now be condemned even without the demonstration of its economic consequences. The Commission has studied the effects of such 'entrepreneurial chains' and seen the damage they do and a per se rule should be used.") (initial decision, affirmed by the FTC opinion, 93 F.T.C. at 735); [*In the Matter of Koscot Interplanetary, Inc.*, No. 8888, 86 F.T.C. 1106, 1182 (F.T.C. Nov. 18, 1975] ("To require too large an evidentiary burden to condemn these schemes can only ensure that future generations of self-made commercial messiahs will dare to be great and dare anyone to stop them.").  The alternative—placing the burden on the government—forces the government to wait

until after the collapse, as that alternative permits operators to maintain that the absence of collapse proves the success of the anti-saturation policies.

*Gold Unlimited*, 177 F.3d at 482.  Accordingly, the Court denies Defendant Barnes' motion to exclude on this issue.

Similarly, the Court rejects Defendant Syn's argument.  As discussed above, "Rule 403 is not concerned with 'the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'"  *Hinkle*, 2012 WL 4049477, *1 (quoting *Mendez–Ortiz*, 810 F.2d at 79).  The argument by the United States to the jury that I2G or G1E was a pyramid scheme does not tend to suggest a decision on an improper basis.  In fact, the conspiracy to commit mail fraud charge centers around alleged material misrepresentations and concealments made by Defendants to induce individuals to "invest" in an alleged illegal pyramid scheme.  Evidence of the alleged pyramid scheme or reference to the alleged pyramid scheme is not unduly prejudicial and does not require exclusion under Rule 403.  The motion in limine is denied.

## 4.  Admissibility of Puffery and Sales Talk [DN 306]

Defendants argue that the United States improperly seeks to introduce evidence of forward-thinking opinions and statements offered by Defendants in an effort to support the United States' claim of conspiracy to commit mail fraud and its claim of securities fraud.  [DN 306 at 3].  Defendants maintain that "[s]uch statements are inadmissible because, as a matter of law, forward-thinking statements—known as puffery or 'sales talk'—simply do not constitute fraud and fail to meet the Sixth Circuit's objective test of materiality." [DN 306 at 3 (citing *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (securities fraud case); *Mitchell v. GM LLC*, No. 3:13CV-498-CRS, 2014 WL 1319519 (W.D. Ky. Mar. 31, 2014) (breach of express warranty case)).  As an example, Defendant Barnes cites the Second Superseding Indictment which asserts

8

that "[o]n or about October 28, 2013, **BARNES** told investors that 'I personally in my own opinion, feel like we will be able to put between 100,000 and 200,000 people in between now and the end of the year, and I think one half a million people next year is not out of the question at all.'" [DN 230 at ¶ 22]. Defendant Barnes claims that statements in which he explicitly states his own personal feelings predicting future success of the company are vague, soft, puffing statements that are, as a matter of law, immaterial and cannot satisfy the Sixth Circuit's objective test for materiality and, as a result, should be excluded.

In response, the United States objects accurately noting that the cases primarily relied upon by Defendants for this argument involve securities fraud litigation and not mail and wire fraud cases which provide that the government can meet the mail and wire fraud statutes' intent requirements through proof that a defendant was reckless in his disregard for the truth. *See, e.g.*, *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013); *United States v. Kurlemann*, 736 F.3d 439, 449 (6th Cir. 2013). Additionally, the United States maintains that even with respect to the securities fraud context, the statement to which Barnes objects is not the same kind of vague statement as those described in *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563 (6th Cir. 2004). [DN 339 at 7–8]. The Court agrees with the United States.

The mail fraud statute prohibits the use of the mails by any person "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . ." 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006). "Materiality of falsehood is a requisite element of mail fraud." *United States v. Michael*, No. 3:16CR-101-CRS, 2017 WL 1788291, at *2 (W.D. Ky. May 3, 2017) (citing *Neder*

9

*v. United States*, 527 U.S. 1, 25 (1999)).  The government can "meet mail- and wire-fraud statutes' intent requirements through proof that [defendant] was reckless in his disregard for the truth of the statements that he made to victims to obtain their money."  *Kennedy*, 714 F.3d at 958; *see also United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998); *United States v. Turner*, 22 F. App'x 404, 410 (6th Cir. 2001).

Significantly, the case law suggests that for both mail fraud and securities fraud, the jury generally decides whether the alleged misrepresentations satisfy the elements of the offense or whether those statements are merely opinions, puffery, or sales talk.  *See United States v. Plato*, 593 F. App'x 364, 378 (5th Cir. 2015); *United States v. Simpson*, 440 F. App'x 393, 393–94 (5th Cir. 2011); *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 1565757, at *5 (S.D. W.Va. Apr. 8, 2015) (securities fraud case ) ("The Defendant's assertion that these statements are only business puffery is likewise more appropriate for the jury to decide as it intertwines legal and factual determinations."); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 573 (S.D.N.Y. 2011), aff'd sub nom. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (securities litigation) ("The jury, which received specific instructions on puffery and materiality, was entitled to make the ultimate determination as to whether this statement, and others like it, was material.").

In the present case, in addition to the statement objected to by Barnes, the Second Superseding Indictment asserts that I2G had fewer than 7,000 members at the end of 2013, and fewer than 24,000 members at the end of 2014." [DN 230 at ¶ 22].  According to the United States, the evidence will reflect that Barnes was a co-owner of I2G from its inception.  Thus, when Barnes communicated to potential "investors" in late October 2013 that I2G will have between 100,000 and 200,000 people by the end of 2013, the statement does not appear to be puffing or sales talk.

10

Instead, at the time Barnes made the statement, I2G had under 10,000 members, a fact which the United States maintains that Barnes either knew and deliberately concealed or was recklessly indifferent to whether or not it was true or false.  The Court finds that a reasonable juror could conclude that statements such as this are material as opposed to puffery or sales talk.

Additionally, the Court agrees with the United States that with respect to securities fraud litigation, the statement referenced by Barnes is not the same type of statement as those described in *In re Ford Motor Co. Sec. Litig.*.[3]

For these reasons, the motion to exclude these statements is denied.

## 5. Admissibility of Statements in Furtherance of the Conspiracy [DN 306, DN 308, DN 309, DN 313]

Defendants argue that prior to the introduction of any statements, the United States must establish a foundation that each Defendant was aware of each false representation allegedly made or was party to an agreement that such statements would be made.  [DN 306 at 5; DN 313 at 2–3].  Similarly, Defendant Maike maintains that such statements should only be admitted "if the Government can first show that the statement was approved or ratified by Mr. Maike."  [DN 308

---

[3] In the context of security fraud litigation, the Sixth Circuit stated:

Immaterial statements include vague, soft, puffing statements or obvious hyperbole" upon which a reasonable investor would not rely.  *In re K–tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002). Statements that are "mere puffing" or "corporate optimism" may be forward-looking or "generalized statements of optimism that are not capable of objective verification."  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997).  In their complaint, plaintiffs allege that Ford made many misleading statements regarding its commitment to quality, safety, and corporate citizenship, such as: 1) "[A]t Ford quality comes first."; 2) "We aim to be the quality leader"; 3) "Ford has its best quality ever"; 4) Ford is "taking across-the-board actions to improve . . . [its] quality."; 5) Ford has made "quality a top priority"; 6) "Ford is a worldwide leader in automotive safety"; 7) Ford has made "quality a top priority"; 8) Ford is "designing safety into ... [its] cars and trucks" because it wants its "customers to feel safe and secure in their vehicles at all times"; 9) Ford "want[s] to make customers' lives ... safer"; 10) Ford has "dedicated ... [itself] to finding even better ways of delivering . . . safer vehicles to [the] consumer"; 11) Ford "want[s] to be clear leaders in corporate citizenship"; 12) Ford's "greatest asset is the trust and confidence . . . [it] has earned from . . . [its] customers"; 13) Ford "is going to lead in corporate social responsibility."

*In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d at 570–71.

at 4].  Defendant Hosseinipour argues that she "could not control other business entities and their spokespersons in which she was not part of herself thus statements should not be able to be used against her" because they are irrelevant  [DN 309 at 2].  In response, the United States objects arguing that there is no support in the law that each defendant must have knowledge of every false statement made by a co-conspirators in furtherance of the conspiracy to commit mail fraud before such statement may be introduced into evidence at trial.  [DN 339 at 9–10].  The Court will address this argument generally.  In section 6 of this opinion, the Court will address the admissibility of co-conspirator's statements in terms of hearsay.

The essential elements of the crime of conspiracy "are that the alleged conspiracy existed, the defendant willfully became a member, and one of the conspirators knowingly committed at least one alleged overt act in furtherance of some object or purpose of the conspiracy." *United States v. Ross*, 190 F.3d 446, 450 (6th Cir. 1999).  Furthermore, "[t]he government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that the defendant was a party to the general conspiratorial agreement. Although the connection between the defendant and the conspiracy need only be slight, an agreement must be shown beyond a reasonable doubt." *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).  "It is also not necessary to show that a defendant knew the full extent of the enterprise." *Ross*, 190 F.3d at 450. *See* Sixth Circuit Pattern Jury Instructions 3.03(2)("This does not require proof that a defendant knew everything about the conspiracy, or everyone else involved, or that he was a member of it from the very beginning.  Nor does it require proof that a defendant played a major role in the conspiracy, or that his connection to it was substantial.  A slight role or connection may be enough."); *United States v. Grooms*, 194 F. App'x 355, 362 (6th Cir. 2006) (government need not

prove that a defendant participated in all aspects of the conspiracy or that he was necessarily aware of his coconspirators' actions taken in furtherance of the conspiracy).

Here, the conspiracy alleged is conspiracy to commit mail fraud. As noted above, every member of a conspiracy need not be an active participant in every phase of the conspiracy. Defendants provide no authority for their proposition that each defendant must have knowledge of every false statement made by co-conspirators in furtherance of the mail fraud conspiracy. In fact, to convict a defendant, "the government need[s] to prove that [the Defendant] knowingly joined an agreement to commit mail . . . fraud and that a party to the agreement took an overt act in support of it." *United States v. Phillips*, 872 F.3d 803, 806 (6th Cir. 2017) ("The only pertinent question, then, was whether Phillips was in on the scheme. The government did not need to show that Phillips made material misstatements to prove that." *Id*. at 807.).

Accordingly, the Court denies this motion in limine.

## 6. Admissibility of Statements/Emails of Co-Defendants: Hearsay and Sixth Amendment [DN 306, DN 309, DN 313]

Defendants object to the admission of any statement of co-defendants, including those through email. Defendants argue that admissions of such statements are inadmissible hearsay and violate their Sixth Amendment right to confront witnesses. [DN 306 at 6; DN 309 at 2; DN 313 at 2–3]. The parties did not tender the statements or emails in question.

Hearsay is an out of court statement offered for the truth of the matter asserted in the statement. Fed. R. Evid. 801(a)-(c). Federal Rule of Evidence 801(d)(2)(A) exempts from the definition of hearsay an "opposing party's statement." Likewise, "statements made by co-conspirators are sometimes an admissible exemption to the hearsay rule." *United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 4125618, at *2 (E.D. Ky. Aug. 29, 2019).

Federal Rule of Evidence 801(d)(2)(E) provides that an out of court statement is admissible when the statement is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In *United States v. Enright*, the Sixth Circuit established a test for admitting a co-conspirator's out of court statement pursuant to Rule 801. *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). "In order to admit evidence under 801(d)(2)(e), the District Court must make the requisite *Enright* findings, namely: '(1) that the conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the co-conspirators statements were made in furtherance of the conspiracy.'" *Lundergan*, 2019 WL 4125618, at *2 (quoting *Enright*, 579 F.2d at 986). These elements need only be proven by a preponderance of the evidence. *Id*.

Notably, the Sixth Circuit has "long recognized the trial court's prerogative to conditionally admit co-conspirator statements subject to a later demonstration of their admissibility by a preponderance of the evidence." *United States v. Perkins*, No. CRIM.A. 12-11-DLB-EB, 2014 WL 3436074, at *12 (E.D. Ky. July 11, 2014) (quoting *United States v. Robinson*, 390 F.3d 853, 867 (6th Cir. 2004) (quoting *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979)). Exercising this discretion, the Court will likely conditionally admit these statements and emails pending further demonstration of their admissibility by a preponderance of the evidence at the close of the government's case-in-chief. Accordingly, Defendants' motions to exclude all co-conspirator hearsay statements are denied.[4]

Furthermore, in as much as these statements and emails qualify as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), such statements and emails are not testimonial, and do not give rise to confrontation objections. *United States v. Stover*, 474 F.3d

---

[4] In the United States' pretrial memorandum, the United States recognized that if the emails are part of a chain, it would redact those portions that are inadmissible hearsay. [DN 185 at 27].

904, 912–13 (6th Cir. 2007) (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)); *United States v. Martinez*, 430 F.3d 317, 328 (6th Cir. 2005) (holding that co-conspirators' statements made in furtherance of conspiracy are not testimonial); *United States v. King*, 351 F.3d 859, 865 (8th Cir. 2003) (Court found statement of co-conspirator not in violation of confrontation clause, reasoning that "[i]nsofar as such hearsay considerations [ ] apply in this case, the exclusionary principles embodied in the Confrontation Clause do not nullify the well-established reasons for making such admissions non-hearsay under the hearsay rule."); *United States v. Tragas*, 727 F.3d 610, 615 (6th Cir. 2013).  Therefore, the Confrontation Clause does not bar their admission.

Thus, the motion to exclude these statements are denied.

Finally, Defendant Barnes notes that while these issues can be resolved by the Court during the course of the trial, he requests the United States identify any such statements it intends to use in its opening statement so that the Court can evaluate the documents in advance of trial.  An opening statement is not testimony and cannot be considered as evidence.  It is simply an outline of what counsel believes the evidence is going to be.  The Court will instruct the jury of this prior to opening arguments.  For this reason, Defendant Barnes' request is denied

### 7.  Federal Rule of Evidence 404(b) [DN 308, DN 313]

Defendants seek to exclude any Federal Rule of Evidence 404(b) evidence possessed by the United States arguing that any probative value of the evidence would be substantially outweighed by its prejudicial effect.  Under the current scheduling order, the United States' production deadline for Rule 404(b) evidence has not expired.  Thus, Defendants' motion is premature and is denied at this time.

In prior scheduling orders in this case, the Court directed the United States to provide notice of any Rule 404(b) evidence 14 days prior to trial.  However, in an effort to prevent further delay,

the Court orders the United States to provide notice within 30 days of trial of any Rule 404(b) evidence.

## 8. Exclusion of References to I2G Holding Funds in Escrow on Behalf of IBOs [DN 308]

Defendants seek to exclude any argument or suggestion by the United States that I2G held funds in escrow or on behalf of I2G's IBOs. Defendants argue that irrespective of whether they were knowingly selling securities, there is no evidence to suggest that I2G was holding funds in escrow for or on behalf of its IBOs. Accordingly, Defendants maintain that such an argument would be highly prejudicial and of virtually no probative value. [DN 308 at 3]. In response, the United States indicates that one way I2G paid its investors—both commissions and casino profits—was to credit their "back office" account. Investors could then request a check for funds that they were due. The United States maintains that this process is a relevant part of how Defendants committed their crimes. [DN 339 at 13].

The Court agrees with the United States that evidence of how IBOs/investors were paid by I2G is relevant and not prejudicial. For these reasons, the Court denies this motion in limine.

## 9. Evidence of Maike's Personal Expenditures [DN 308]

Defendant Maike argues that the Court should exclude pursuant to Federal Rule of Evidence 403 any evidence concerning purportedly lavish, personal expenditures made by him. Maike argues that the probative value of any such evidence would be substantially outweighed by the unfair prejudice. First, Maike argues that such evidence has little bearing upon whether he was running an illegal pyramid scheme, and only provides insight into how Maike chose to spend money that he earned from his business. Second, Maike argues that presenting evidence about his personal, lifestyle decisions will permit the jury to draw impermissible inferences, including that any such choices are traceable to allegedly illegal conduct and were connected to illegal activity.

[DN 308 at 3–4].

As discussed above, Federal Rule of Evidence 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is not excluded merely because it is damaging or prejudicial to a defendant's case; rather, it must be *unfairly* prejudicial." *Hinkle*, 2012 WL 4049477, *1 (citing *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403." *Hinkle*, 2012 WL 4049477, *1 (citing United States v. Chambers, 441 F.3d 438, 456 (6th Cir. 2006)). "[T]o warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially outweigh* its probative value." *Hinkle*, 2012 WL 4049477. *1 (citing Fed. R. Evid. 403). "Rule 403 is not concerned with 'the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'" *Hinkle*, 2012 WL 4049477, *1 (quoting *Mendez–Ortiz*, 810 F.2d at 79).

Here, Maike is charged not only with mail fraud, but also with two counts of tax evasion. The Second Superseding Indictment alleges that he accomplished tax evasion by, among other ways, "using corporate funds for personal expenses." [DN 230 at ¶¶ 36, 38]. As correctly noted by the United States, the "personal expenditure method" is one way to prove tax evasion. *See United States v. Black*, 843 F.2d 1456, 1461 (D.C. Cir. 1988); *United States v. Bourne*, 946 F.2d 887 (4th Cir. 1991) (utilization of the net-worth-plus-personal expenditures method of proof); *United States v. Mitchell*, 271 F. Supp. 858 (N.D. Ill. 1967); *United States v. Hart*, 70 F.3d 854, 860–61 (6th Cir. 1995) (recognizing the use of multiple corroborative methods of proof in tax

17

prosecutions; government introduced evidence that defendant engaged in several extramarital affairs, gambled, and purchased vast quantities of lottery tickets).

Furthermore, the Sixth Circuit addressed the use of evidence of personal spending in a criminal tax case. In *United States v. Blanchard*, the Sixth Circuit held that evidence regarding a defendant's discretionary spending bears on the willfulness of a defendant's failure to pay taxes. *United States v. Blanchard*, 618 F.3d 562, 569 (6th Cir. 2010); *see also United States v. Snyder*, No. 1:17CR507, 2018 WL 2392564, at *3 (N.D. Ohio May 25, 2018); *United States v. Griffin*, 524 F.3d 71, 82 (1st Cir. 2008). In *Blanchard*, the Sixth Circuit upheld the district court's denial of a motion in limine seeking to exclude evidence of defendant's discretionary spending including car leases, gambling losses, firearm purchases, and the purchase of a CD player. *Snyder*, 2018 WL 2392564, at *3 (citing *Blanchard*, 618 F.3d at 569). "Blanchard argued that the gambling evidence created a risk of undue prejudice, but the Sixth Circuit held that the relevance of 'spending a comparatively large amount of money on his own entertainment in lieu of paying over taxes to the IRS substantially outweighs the potential for prejudice arising from admission of this evidence.'" *Snyder*, 2018 WL 2392564, at *3 (citing *Blanchard*, 618 F.3d at 570).

For these reasons, the Court finds that evidence of Maike's personal expenditures is not so prejudicial as to substantially outweigh its significant probative value. The motion to exclude this evidence is denied.

**10. References to G1E's Role in the Pyramid Scheme [DN 308]**

Defendants seek to exclude references to G1E's role in the charged crimes. Defendants maintain that since the Second Superseding Indictment primarily focuses upon I2G, the United States should be barred from discussing G1E's role in the pyramid scheme. The Court disagrees.

The Second Superseding Indictment charges conduct from February 6, 2013 and

18

continuing through December 31, 2014. [*See, e.g.*, DN 230 at ¶¶ 1, 13, 23, 24, 39].  This date range covers the alleged criminal behavior related to the mail fraud and securities fraud counts and includes conduct related to both corporate entities.  In fact, the Second Superseding Indictment specifically alleges that on July 22, 2014, "I2G abruptly changed its name to Global 1 Entertainment (hereinafter 'G1E').  The I2G Touch was rebranded as the G1E Touch."  [DN 230 ¶ 16].  The Second Superseding Indictment clearly asserts criminal activity between July 22, 2014 and December 31, 2014, which is time period the "rebranded company"—G1E—operated.  Thus, Defendants' motion in limine to exclude references to G1E is denied.

### 11.  Summary Charts [DN 308, DN 313]

Defendants seek to exclude the summary charts the United States will seek to introduce in its case-in-chief because the United States has failed to make the underlying evidence upon which those charts are based available for inspection and has not yet shown that all of the underlying documents are admissible in evidence pursuant to Federal Rule of Evidence 1006.  [DN 308 at 5]. In response, the United States argues that this issue is premature and may be addressed when the United States seeks to admit summary charts.  [DN 339 at 15].  The United States further responds that all underlying documents will be provided pursuant to the United States' ongoing discovery obligations.  [*Id.*].  The United States lists nine summary charts in its Exhibit List.  [DN 298].

Federal Rule of Evidence 1006 governs the admissibility of evidentiary summaries and provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  Rule 1006 further provides that the party "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  *Id.*  The Sixth Circuit has interpreted Rule 1006 as imposing five requirements for the admission of an

evidentiary summary: "'(1) the underlying documents must be so voluminous that they cannot be conveniently examined in court, (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place, (3) the underlying documents must be admissible in evidence, (4) the summary must be accurate and nonprejudicial, and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.'" *United States v. Mills*, No. 16-CR-20460, 2019 WL 409659, at *3 (E.D. Mich. Feb. 1, 2019) (quoting *United States v. Modena*, 302 F.3d 626, 633 (6th Cir. 2002)).

The Sixth Circuit recognizes that "to satisfy the 'made available' requirement, a party seeking to use a summary under Rule 1006 must identify its exhibits as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed." *United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005) (quoting *Modena*, 302 F.3d at 633 (quoting *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996)). As noted in *Jamieson*, "merely making the records available upon request is insufficient." *Id*. at 409. However, "Rule 1006 does not require . . . that the government provide [defendants] with a copy of the actual summary or send copies of the relevant documents to [defendants]." *Id*. at 409–10. "[T]he purpose of requiring that the proponent of the summaries make the documents available is to 'provide the opposing party . . . with an opportunity to prepare for cross-examination, or to offer exhibits of its own as rebuttal evidence.'" *Id*. at 410 (quoting *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998) (quoting 6 Weinstein's Federal Evidence § 1006.06[1], p. 1006-14 (Joseph M. McLaughlin ed., 2d ed.1997)).

Thus, even if Defendants previously received all the documents to be utilized in the summary charts in discovery, compliance with Rule 1006 is still necessary. According to the Sixth Circuit, to satisfy the "'made available" requirement, "a party seeking to use a summary under

Rule 1006 must identify its exhibits as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed." *Jamieson*, 427 F.3d at 409; *see also Stryker Corp. v. XL Inc. America*, No. 4:01-CV-157, 2006 WL 3802174 (W.D. Mich. Dec. 21, 2006). Additionally, Rule 1006 notice must be made in a timely manner. *Jamieson*, 427 F.3d at 410–11.

Defendants' motion in limine to exclude the summary charts is denied. In the interest of preventing further delay, the United States shall satisfy the Rule 1006 requirements **no later than June 15, 2020**.

## 12. Evidence Before and After the Charged Dates of the Conspiracy [DN 309, DN 313]

Count 1 of the Second Superseding Indictment charges conduct from February 2, 2013 and continuing through December 31, 2014. Defendants seek to exclude any evidence regarding events that occurred prior to or after the conspiracy dates arguing that this evidence is irrelevant and unduly prejudicial. In response, the United States maintains that to tell the story of the crimes charged, it will reference actions and events before and after the charged dates of the conspiracy. The United States contends that this evidence is classified as "res gestae" evidence and properly admissible. Additionally, the United States argues that evidence of conduct outside the charged dates of the conspiracy could also be admitted pursuant to Federal Rule of Evidence 404(b). [DN 339 at 15]. None of the parties tendered the exhibits in question.

Generally, *res gestae* is "an exception to Rule 404(b)" that allows for the admission of background evidence related to the present case, despite the fact that this evidence may otherwise be inadmissible under Rule 404(b). *United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). *Res gestae* will be admissible when it "has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the

charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citations omitted).  This exception to Rule 404(b) is premised on the "principle that the jury is entitled to know the setting of a case." *United States v. Grooms*, 566 F. App'x 485, 491 (6th Cir. 2014) (citations omitted).

The Court denies Defendants' blanket motion to exclude all evidence of conduct that occurred outside the charged dates of the conspiracy.  Any objection with respect to a specific exhibit or evidence can be addressed at the pretrial conference or at trial upon objection by Defendants.

### 13.  Scope of the Mail Fraud Conspiracy [DN 309]

Defendants seek to limit the United States' proof related to the mail fraud conspiracy to issues of whether or not I2G was an illegal pyramid scheme.  [DN 309 at 1].  Specifically, Defendants seek to exclude "criticisms of the business practices" of I2G that are not relevant to whether the company was an illegal pyramid scheme and any "false statements unrelated to casino profits."  [*Id.* at 1–2].  Defendants argue that the business practices of I2G are not relevant to whether I2G was a pyramid scheme pursuant to Federal Rules of Evidence 401, 402, 403, and 404(b).  [*Id.*].

The Court denies this motion.  Count 1 of the Second Superseding Indictment charges conspiracy to commit mail fraud.  As discussed above, the mail fraud statute, 18 U.S.C. § 1341, requires proof of three elements: (1) the defendant knowingly devised a scheme or artifice to defraud; (2) the defendant did so with the intent to defraud; and (3) the defendant used the mails to implement the scheme.  The Second Superseding Indictment alleges that the Defendants devised a scheme or artifice to defraud through promotion of a pyramid scheme, material

22

misrepresentations, and concealments of material facts.  [DN 230 at ¶¶ 1–25].  Accordingly, evidence related to misrepresentations or concealments of material facts, including testimony or evidence related to I2G's business practices and false statements unrelated to casino profits, is relevant and probative of the ways in which Defendants undertook the scheme to defraud charged in Count 1.

Furthermore, evidence related to I2G's business practices and false statements unrelated to casino profits are not unduly prejudicial and do not require exclusion under Rule 403.  As discussed above, "Rule 403 is not concerned with 'the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.'"  *Hinkle*, 2012 WL 4049477, *1 (quoting *Mendez–Ortiz*, 810 F.2d at 79).  This evidence does tend to suggest a decision on an improper basis.  In fact, the conspiracy to commit mail fraud charge centers around alleged material misrepresentations and concealments made by Defendants to induce individuals to "invest" in the scheme.  The motion in limine is denied.

## 14.  Distinguishing Defendants Who Worked for I2G from Those Who Owned I2G [DN 309, DN 313]

Defendants seek to exclude an inference or reference that Hosseinipour, Syn, Dvorin, and Anzalone are part of the business entity of I2G and G1E.  [DN 309 at 2–3; DN 313 at 2].  Defendants argue that Maike, Barnes, and Angela Leonard were the only persons who had direct knowledge of the I2G/G1E companies' internal affairs and workings.  [DN 309 at 3].  The other Defendants each had their own separate entities in which they worked for I2G/G1E by helping to promote I2G/GIE.  Defendants argue that "the Court should ensure the United States reflects this working relationship and separation of companies when presenting exhibits and making

statements." [*Id.*].

In response, the United States maintains that there is no dispute between the parties as to who worked for I2G and who owned I2G, there are no corporate defendants charged, and there is no risk the jury will be confused on this issue. [DN 339 at 17]. The United States responds that it is unclear as to what Defendants are requesting specifically.

A review of the response by the United States reveals that the United States does not intend to argue or to suggest that Hosseinipour, Syn, Dvorin, or Anzalone are owners of I2G/G1E. Additionally, to the extent they fear confusion, Defendants will have the chance to cross-examine witnesses regarding the specifics of the working relationships at issue. In as much as Defendants are arguing that Maike's and Barnes' statements or emails cannot be introduced against the remaining Defendants because they did not have direct knowledge of I2G's internal affairs, the Court has addressed this issue above in discussing the admissibility of co-conspirator's out of court statements. Accordingly, the motion is denied.

## 15. Foundation of Syn's Banking Records [DN 313]

The United States plans to admit various international banking records from Jason Syn's HSBC accounts. [DN 339 at 17]; [DN 298, Exhibits 214, 215, 320, 323, 324, 329, 330]. The United States represents that it obtained each of the exhibits through a subpoena to HSBC with a certification for the records provided by the custodian or through Maike's first set of attorneys. [DN 339 at 17]. Defendant Syn moves to exclude any of his banking records because the evidence lacks the proper foundation or authentication and is hearsay. [DN 313 at 1]. None of the parties submitted the exhibits or the certification of the custodian. Additionally, the Court cannot discern whether the certification was made available by the United States for inspection.

The United States indicates that the bank records in question are admissible under Rule

24

803(6) and can be properly authenticated under Rule 902(9) ("commercial paper, a signature on it, and related documents" are self-authenticating "to the extent allowed by general commercial law"), Rule 902(11), and Rule 902(12).

Federal Rule of Evidence 803(6) "permits business records to be admitted into evidence despite the normal bar against the introduction of hearsay as long as four requirements are met: (1) the records were 'created in the course of a regularly conducted business activity;' (2) the records were 'kept in the regular course of that business;' (3) the records resulted from a 'regular practice of that business' to create such documents; and (4) the records were 'created by a person with knowledge of the transaction or from information transmitted by a person with knowledge.'" *United States v. Ramer*, 883 F.3d 659, 677–78 (6th Cir. 2018) (quoting *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071–72 (6th Cir. 2014); Fed. R. Evid. 803(6)). "The fulfillment of these conditions must be 'shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification.'" *Ramer*, 883 F.3d at 678 (quoting Fed. R. Evid. 803(6)(D)). "Once these conditions have been shown to be satisfied, another party may challenge the veracity of the business records by showing 'that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.'" *Id.* (quoting Fed. R. Evid. 803(6)(E)); s*ee also United States v. Coffman*, 574 F. App'x. 541, 556 (6th Cir. 2014) (permitting authentication through a government agent or other person outside the organization as long as the witness is familiar with the record keeping system).

In as much as the bank records are "foreign records of regularly conducted activity," Title 18 U.S.C. § 3505[5] would control their admissibility. *See United States v. Sturman*, 951 F.2d 1466,

---

[5] This statute provides:

1489 (6th Cir. 1991) (explaining that "[s]ection 3505 allows the admission of foreign records, and prevents their exclusion as hearsay, provided that a foreign certification attests to certain facts"); *United States v. Al-Imam*, 382 F. Supp. 3d 51, 56–57 (D.D.C. 2019) (Congress based § 3505 on Rule 803(6) and instructed courts to interpret 'the language in subsection (a)(1)(A), (B), (C), and (D) [of the statute] . . . in the same manner as the comparable language in Rule 803(6) is interpreted.'").

Defendant Syn has not suggested that the United States failed to give him notice of its intent to offer the record or failed to make the record and certificate available for inspection. Further, Neither Defendant Syn nor the other Defendants have demonstrated or even alleged that the source of the bank records or the method or circumstances of preparation of the records indicate a lack of trustworthiness.

For these reasons, the motion in limine to exclude these bank records is denied.

## 16.  Qubeey Bankruptcy [DN 313]

Defendants object to "[a]ny information of Qubeey bankruptcy (Government Exhibits Nos. 125 and 126)." Defendants do not raise any grounds for their exclusion.

In response, the United States explains that Exhibit 125 is a June 3, 2014, email to Maike regarding the Qubeey bankruptcy and Exhibit 126 is a May 30, 2014, filing in the Qubeey bankruptcy. Qubeey is the company that developed the I2G Touch. The United States maintains

---

In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—

(A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

(B) such record was kept in the course of a regularly conducted business activity;

(C) the business activity made such a record as a regular practice; and

(D) if such record is not the original, such record is a duplicate of the original;

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1).  *See also United States v. Ekiyor*, 90 F. Supp. 3d 735, 738 (E.D. Mich. 2015).

that the history of the I2G Touch and the subsequent Qubeey bankruptcy is central to the United States' showing that I2G's business was not centered around this "product," but rather around fraud. [DN 339 at 18]. The United States represents that it plans to show that Maike was aware of Qubeey's many problems—both software and financial—and consistently hid those facts from investors, instead making claims that I2G had exclusive rights to a revolutionary product, claims which Maike knew were false. According to the United States, the truth was that I2G had non-exclusive rights to the near-zero-value product of a company which Maike knew was in bankruptcy. [DN 339 at 19]. In its response, the United States indicates that it attached the two proposed exhibits; however, there are no attachments to the United States response. [DN 339 at 18 n. 4].

Having not be presented with a reason why the information regarding the Qubeey bankruptcy should be excluded, the Court denies the motion in limine.

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. The motions in limine [DN 306, DN 308, DN 309, DN 313] are **DENIED**. The United States should be prepared to address at the pretrial conference any remaining issues identified by the Court.

2. The United States shall provide notice within 30 days of trial of any Rule 404(b) evidence.

3. The United States shall satisfy the Federal Rule of Evidence 1006 requirements **no later than June 15, 2020**.

Joseph H. McKinley

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

May 15, 2020

27